UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00137-JAW-1 |
| | ) | No. 1:17-cr-00071-JAW-1 |
| WILLIAM CURTIS OLIVER | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

A defendant serving concurrent sentences in federal prison of one-hundred and twenty months for failing to register as a sex offender and one-hundred and fifty-one months for possession of child pornography moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Although the defendant meets the procedural requirements to file his motion, the court concludes that the defendant has not met his burden of showing "extraordinary and compelling reasons" for his release and that the defendant's danger to the public weighs against his release. The court accordingly dismisses the motion without prejudice.

## I.   BACKGROUND

### A.   The Failure to Register as a Sex Offender Charge: 1:16-cr-00137-JAW-1

On October 14, 2016, a federal grand jury indicted William Curtis Oliver in one count of failure to register as a sex offender, an alleged violation of 18 U.S.C. § 2250(a). *Indictment* (ECF No. 14). On December 13, 2016, the Court accepted Mr. Oliver's guilty plea and remanded him to the custody of the U.S. Marshal Service.[1] *Min. Entry* (ECF No. 26).

---

[1]      Mr. Oliver was initially taken into federal custody pursuant to an arrest warrant on September 15, 2016. *Arrest Warrant* at 1 (ECF No. 6).

**B.      The Possession of Material Containing Child Pornography Charge: 1:17-cr-00071-JAW-1**

On June 8, 2017, Mr. Oliver waived his right to prosecution by indictment and consented to prosecution by information, *Waiver of Indictment* (ECF No. 1), and the Government brought against Mr. Oliver one count of possession of material containing child pornography, an alleged violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A).  *Information* (ECF No. 2).  That same day, Mr. Oliver appeared before the Court and pleaded guilty to the possession of material containing child pornography charge.  *Min. Entry* (ECF No. 6).

**C.      The November 30, 2017 Sentencing**

On November 30, 2017, the Court sentenced Mr. Oliver to one-hundred and twenty months on the failure to register as a sex offender charge and one-hundred and fifty-one months on the possession of material containing child pornography charge, to be served concurrently, and $200 in special assessments, *Min. Entry*, 1:16-cr-00137-JAW-1 (ECF No. 46); *Min. Entry*, 1:17-cr-00071-JAW-1 (ECF No. 19).  Judgment was entered on both dockets the next day.  *J.*, 1:16-cr-00137-JAW-1 (ECF No. 47); *J.*, 1:17-cr-00071-JAW-1 (ECF No. 20).  According to the Bureau of Prisons' website, Mr. Oliver is due to be released on July 2, 2027.  *See Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited 10/11/2024).

On May 20, 2024, Mr. Oliver filed an identical motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) in both of his criminal cases.  *Def.'s Mot. for Compassionate Release* at 4, 1:16-cr-00137-JAW-1 (ECF No. 50), 1:17-cr-00071-JAW-1 (ECF No. 24) (*Def.'s Mot.*).  On June 24, 2024, the Government responded in

opposition. *Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release*, 1:16-cr-00137-JAW-1 (ECF No. 57), 1:17-cr-00071-JAW-1 (ECF No. 31) (*Gov't's Opp'n*).  On September 4, 2024, Mr. Oliver replied.  *Resp. in Opp'n to Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release*, 1:16-cr-00137-JAW-1 (ECF No. 58), 1:17-cr-00071-JAW-1 (ECF No. 35) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Mr. Oliver's Motion for Compassionate Release

Mr. Oliver argues that he is entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) for two main reasons: first, he has been diagnosed with a terminal illness, and second, he has a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility, and he is not expected to recover from his condition. *Def.'s Mot.* at 4.  In his own words:

> Mr. Oliver is suffering from a serious physical medical condition which substantially diminishes his ability to provide self-care within the environment of a correctional facility, and he is not expected to recover from a list of serious physical medical conditions.  Further, most of his serious medical condition cannot be treated by the B.O.P., and . . . personal health risk factors place Mr. Oliver at an increased risk of suffering severe medical complications that will cause his death at any moment.  Mr. Oliver was not sentenced to death in this case, and has served 75% of his sentence.  Therefore, a reduction in his term of imprisonment is warranted.

*Id.* at 5.  Mr. Oliver also notes that he is over 60 years old.  *Id.* at 7.

Mr. Oliver claims he suffers from medical conditions that "are not or can not be treated by the B.O.P, and that substantially diminish [his] ability to care for

3

[him]self in an institutional setting." *Id.* In support, Mr. Oliver provides the Court

with a list of his medical conditions:

1. Hypertension
2. hyperlipidemia
3. History of heart attack 2007-2024
4. prediabetes
5. COPD
6. bradycardia
7. cardiac catheterization
8. coronary artery disease
9. unstable angina
10. heart size is enlarged
11. high blood pressure
12. major back problems
13. antithrust in both feet
14. asthma/breathing problems
15. GERD

*Id.*[2] He tells the Court that he is taking the follow medications, in the following

dosages and frequencies:

1. Nitrogylcerin S.L. 0.4mg as needed for heart pain
2. Albuterol sulfate HFA 4 times a day
3. Indomethacin 25mg 2 times a day

---

[2]   Mr. Oliver later filed over 400 pages of medical records on both dockets. *Mot. to Seal Med. Recs.*, Attach. 1, *Med. Recs. Pages 1-246*, 1:16-cr-00137-JAW-1 (ECF No. 55), 1:17-cr-00071-JAW-1 (ECF No. 28); *Mot. to Seal Med. Recs.*, Attach. 2, *Med. Recs. Pages 247-432*, 1:16-cr-00137-JAW-1 (ECF No. 55), 1:17-cr-00071-JAW-1 (ECF No. 28).  Upon his motion to seal, the Court sealed those records. *Order*, 1:16-cr-00137-JAW-1 (ECF No. 56), 1:17-cr-00071-JAW-1 (ECF No. 29).

The Court has some doubts about whether all the medical records should be permanently sealed.  In *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the First Circuit observed that medical records are "universally presumed to be private, not public." *Id.* at 63 (quoting *In re Boston Herald*, 321 F.3d 174, 190 (1st Cir. 2003).  Nevertheless, the right of privacy to medical records is "neither fundamental nor absolute." *Id.* (quoting *United States v. Sattar*, 471 F. Supp. 2d 380, 387 (S.D.N.Y. 2006)).  When, as here, a defendant presents a court with his medical records, there is an argument that he has waived the right to claim that those records should remain private. *See id.* at 63.  The *Kravetz* Court suggested redaction as opposed to complete sealing. *Id.* at 62-63.  This issue has not been raised by the parties and, in particular, the Government has not sought to have Mr. Oliver's medical records unsealed.

The Court has concluded that in this case, since the public is aware of Mr. Oliver's medical diagnoses and medications, the right of public access is satisfied without unsealing the medical records underpinning the revealed information.  In other words, to unseal and redact the attached medical records is unnecessary since the public has the critical information to understand the Court's decision on the pending motion.

4

    4. Famotidine 20mg 2 times a day
    5. Amlodipine 5mg once a day
    6. Acetaminophen 325mg 2 times a day

*Id.* at 14.

Mr. Oliver informs the Court that he submitted a request for compassionate release to the F.C.I. Marianna warden on March 26, 2024 and, at the time he submitted his motion to the Court, more than thirty days had elapsed without a reply. *Id.* at 3, 7.

### B.    The Government's Opposition

The Government concedes that Mr. Oliver has exhausted his administrative remedies but opposes Mr. Oliver's motion for release on the merits. *Gov't's Opp'n* at 1, 8-9. The Government says that, as of May 22, 2024, Mr. Oliver has served 61% of his full-term sentence, *id.* at 1 (citing *id.*, Attach. 1, *BOP Sentence Computation*), and "[c]onsidering Oliver has not demonstrated an extraordinary and compelling reason warranting his release and the factors in 18 U.S.C. § 3553(a) weigh heavily against any reduction in sentence, Oliver's motion should be denied." *Id.* at 1-2.

The Government begins by reminding the Court of Mr. Oliver's criminal history—namely, that on November 7, 2012, Mr. Oliver was sentenced to ten years of incarceration for child molestation in the Sumter County Superior Court in Americus, Georgia. *Id.* at 2. As the offense was punishable for more than one year and the conduct was abusive sexual conduct, the Government states that Mr. Oliver's prior conviction makes him a Tier II sex offender. *Id.* The Government observes that, pursuant to 34 U.S.C. § 20913(a), a sex offender must "register, and keep the registration current, in each jurisdiction where the offender resides, where the

offender is an employee, and where the offender is a student." *Id.* Failing to do so constitutes a violation of § 2250(a) and is punishable by fine, imprisonment, or both. *Id.*

The Government avers that on December 5, 2015, Mr. Oliver traveled from Georgia to Maine, where he remained through September 15, 2016. *Id.* "By then," the Government says, "Oliver had signed a document acknowledging his duty to register as a sex offender upon subsequent moves and had demonstrated his ability to successfully do so in the past . . .. Despite this, Oliver failed to register a change of address with the Doughterty County Sheriff's Office and to register as a sex offender in Maine." *Id.* at 2-3 (internal citations omitted). By Mr. Oliver's own admission, the Government emphasizes, he did not "register as a sex offender in Maine because he thought it would require him to travel to Portland, Maine . . . and . . . he did not have the funds for said travel." *Id.* at 3.

The Government recounts that, almost as soon as Mr. Oliver settled in Maine, "he started showing his sexual interest in children." *Id.* At his place of employment, the Government says:

> Oliver made suggestive comments to a woman, texting her "I want to have a threesome with you and your twelve-year-old daughter." When questioned about it, Oliver attempted to play it off as a comment made while intoxicated and indicated he did not mean it. . .. Next, Oliver began conversing with an undercover detective with the Rosenberg (TX) Police Department, who was posing as a 14-year-old female. . .. Their communications spanned from January 2016 to September 2016 and in those conversations, Oliver repeatedly made suggesting comments to the detective, indicating his desire to have sex with who he thought to be a 14-year-old girl.

6

*Id.*  The Government also avers that in the course of these communications, Mr. Oliver sent the undercover detective at least eight images of child pornography, images of himself, and images of his genitalia.  *Id.* at 3-4.

The Government argues that Mr. Oliver has not met his burden to show extraordinary and compelling reasons warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018.  *Id.* at 7 (citing United States Sentencing Guidelines (U.S.S.G.) § 1B1.13(a)).   The Government additionally opposes his motion on the grounds that he remains a danger to the community, *id.* at 14-15, and that the 18 U.S.C. § 3553(a) factors weigh against a sentence reduction.  *Id.* at 15-16.

### 1.    Extraordinary and Compelling Reasons

#### a.    Mr. Oliver's Allegation of Suffering from Terminal Illness

The Government first responds to Mr. Oliver's argument that he is entitled to a sentence reduction because "he has been diagnosed with a terminal illness" and includes a list of his medical conditions.  *Id.* at 9 (citing *Def.'s Mot.* at 4).   The Government contends that Mr. Oliver's motion "fails to specify which health condition has been diagnosed as a terminal illness and does not provide any evidence of such diagnosis."  *Id.* (citing *Def.'s Mot.* at 4).  The Government also avers that none of the conditions included on Mr. Oliver's list meets the Sentencing Guidelines' terminal illness criteria, which define a terminal illness as "a serious and advanced illness with an end-of-life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id.* at 9-

7

10 (quoting U.S.S.G. § 1B1.13(b)(1)(A)). "On the contrary," the Government asserts, "Oliver has been dealing with these conditions and treating them with prescription medications for several years." *Id.* at 10 (citing, e.g., *id.*, Attach. 2, *Oliver 2024 Med. Records*; *id.*, Attach. 3, *Oliver 2023 Med. Records*). The Government also asserts that, "on Oliver's most recent visits to Health Services, no new medical conditions or health concerns were recorded[,] [h]is vitals were normal, and he appeared to be in good health, aside from his preexisting conditions." *Id.* at 12. Thus, the Government avers, Mr. Oliver has failed to meet his burden of showing he has a terminal illness for the purposes of establishing an extraordinary and compelling reason warranting a reduction in sentence. *Id.* at 13.

> **b. Mr. Oliver's Allegations of Suffering from Physical Medical Conditions of Which are Difficult to Administer Self-Care in the BOP and From Which he is not Expected to Recover**

The Government similarly argues that Mr. Oliver's medical records "demonstrate that [he] has been able to provide self-care by administering his own medications and that BOP is capable of treating his conditions." *Id.* The Government specifically points to a Health Service's Clinical Encounter Report from May 15, 2024, which shows that Mr. Oliver visited Health Services after experiencing chest pain and shortness of breath. *Id.* (citing *Oliver 2024 Med. Records* at 5-6). The Report, the Government notes, states that Mr. Oliver took a Nitroglycerin Tablet prior to visiting Health Services, and "states that Oliver reported the medication had stopped his chest pain and shortness of breath by the time of his evaluation less than one hour later." *Id.* (citing *Oliver 2024 Med. Records* at 5-6). The Government also

submits a Health Service's Clinical Encounter Report from February 2, 2024 which documents that Mr. Oliver's prescription medications are self-administered.  *Id.*  In support, the Government analogizes Mr. Oliver's case to *Cannon v. United States*, No. CR 11-048-CG-M, 2019 U.S. Dist. LEXIS 187076 (S.D. Ala. Oct. 29, 2019)) (finding that a defendant with medical conditions including hypertension and hyperlipidemia did not provide evidence that his conditions prevented him from providing self-care within the correctional facility when, among other things, his medications were self-administered).

### 2.   **Danger to the Community**

Considering the factors listed in 18 U.S.C. § 3142(g), the Government further argues that Mr. Oliver remains a danger to the community and that he has failed to meet his burden of showing that, if released, "the safety of any other person and the community" would reasonably be assured.  *Id.* at 14-15 (quoting 18 U.S.C. § 3142(g)).

### 3.   **3553(a) Factors**

"If the Court concludes that Oliver has not demonstrated an 'extraordinary and compelling reason' warranting a reduction," the Government avers, "it may end its analysis and deny [Mr. Oliver's] motion."  *Id.* at 15 (citing *United States v. Saccoccia*, 10 F.4th 1, 8 (1st Cir. 2021)) ("Though the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release").

Turning to the case at hand, the Government argues that the 3553(a) factors provide independent and sufficient grounds for the denial of the motion for sentence reduction. *Id.* First, considering the nature and circumstances of the offenses, the Government maintains Mr. Oliver's "conduct was egregious, damaging, and extremely severe. On at least one occasion, he physically acted on his sexual interest in children and sexually assaulted a child." *Id.* The Government adds that serving time in prison for that offense did "not deter[] [Mr. Oliver] from his sexual interest in children":

> After serving time for that offense . . .. [h]e made comments to the woman at his job about having sexual relations with her daughter. Further, he spent months communicating and indicating his sexual desire to be with someone who he thought was a 14-year-old girl.

*Id.* Mr. Oliver's behavior, before and after his sentence, "endanger[s] children everywhere and Oliver remains a danger to the community," the Government contends. *Id.* at 15-16.

The Government adds that Mr. Oliver "has only served a little over half of the Court-imposed sentence of 151 months," *id.* at 16 (citing *BOP Sentence Computation* at 2), such that "[g]ranting a reduction would . . . undercut 'the seriousness of the offense.'" *Id.* (citing 18 U.S.C. § 3553(a)(2)(A)). "Likewise, a reduction would not 'promote respect for the law,' 'provide just punishment,' or 'afford adequate deterrence,' given the individualized considerations of this case." *Id.* (citing 18 U.S.C. § 3553(a)(2)(A)-(B)).

Based on the foregoing, the Government urges the Court to deny Mr. Oliver's motion for compassionate release on the grounds that he has not demonstrated an

extraordinary and compelling reason, he remains a danger to the community, and the 18 U.S.C. § 3553(a) factors weigh strongly against a reduction.  *Id.*

### C.  Mr. Oliver's Reply

In his reply, Mr. Oliver first argues that he "has been determined to be a low risk of recidivism by the Warden of F.C.I. Marianna prior to the filing of his petition pursuant to § 3582" and thus "the government[']s claim regarding danger to the community is moot."  *Def.'s Reply* at 1.

Second, Mr. Oliver argues that his "medical circumstances . . . warrant a sentence reduction at this time" pursuant to the amended version of U.S.S.G. § 1B1.13(b), which includes "the medical needs of the defendant" as one of the "extraordinary and compelling reasons for modifying a sentence."  *Id.* (citing *United States v. Mitchell*, 472 F. Supp. 3d 403, 407 (E.D. Mich. 2020); *United States v. Berrios-Cruz*, 2023 U.S. Dist. LEXIS 131366 (D.P.R. 2023)).

## III.  LEGAL STANDARD

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) states:

The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Before a court considers a defendant's motion for compassionate release, it must determine whether the defendant has met the procedural prerequisites for bringing such a motion. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *8 (D. Me. Apr. 10, 2020) (finding satisfaction of the exhaustion or thirty-day requirement of section 3582(c) to be a mandatory prerequisite to a motion for sentence reduction). These requirements are mandatory. *See id.* ("There is no exception to this requirement in the language of section 3582(c), and the Court cannot read one into the section"). However, the exhaustion requirement is not a jurisdictional bar and can be waived. *United States v. Faucette*, No. 2:13-cr-79-DBH-01, 2020 U.S. Dist. LEXIS 143154, at *2 (D. Me. Aug. 11, 2020); *United States v. Whalen*, No. 1:11-cr-00033-JAW, 2020 U.S. Dist. LEXIS 118896, at *13 n.2, 15 (D. Me. July 7, 2020) ("District courts within this circuit have so far concluded that the exhaustion requirement in § 3582(c)(1)(A) is nonjurisdictional"); *see also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

When a defendant has shown he or she has satisfied the procedural prerequisites for bringing a motion for compassionate release, a court may reach the merits of the petition and determine whether "extraordinary and compelling reasons warrant" the movant's release, considering in its determination "the factors set forth in [U.S.S.G.] section 3553(a)" and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission issued a policy statement under U.S.S.G. § 1B1.13 to assist courts in addressing compassionate release motions under § 3582(c)(1)(A). The Guidelines

note that the movant must meet the "requirements of subdivision (2)," U.S.S.G. MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018), which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Section 3142(g) sets forth the factors a court must consider before releasing a person pending trial; U.S.S.G. § 1B1.13 incorporates these same standards into the assessment of a request for compassionate release. They include (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Regarding factor (3), the history and characteristics of the person, the statute directs the court to consider:

(A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A-B).

After a court has determined whether the defendant poses a danger to the public, § 1B1.13 provides that the court should determine whether "extraordinary and compelling reasons" exist to warrant the defendant's release. U.S. SENTENCING

GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).[3]  As relevant here, the policy statement provides that "extraordinary and compelling reasons" may exist when:

**(1)    Medical Condition of the Defendant.—**

(A)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)    The defendant is—

(i)    suffering from a serious physical or medical condition,

(ii)    suffering from a serious functional or cognitive impairment, or

(iii)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(A), (B).

---

[3]    On April 5, 2023, the United States Sentencing Commission submitted Amendment 814 to Congress, as a response to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which permits criminal defendants to file motions for sentence reduction directly, as opposed to such motions being permitted only from the Bureau of Prisons; this amendment became effective on November 1, 2023.  *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814.  Among other things, Amendment 814 revised the list of "extraordinary and compelling reasons" that may warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See* U.S.S.G. § 1B1.13(b) (Nov. 1, 2023) (listing extraordinary and compelling reasons); *see also U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814, Reason for Amend. at 206 ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis").

The movant has the burden of showing entitlement to a sentence reduction, and "the Court 'has broad discretion in deciding whether to grant or deny a motion for sentence reduction.'" *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citation omitted)).

## IV.   FACTUAL BACKGROUND

### A.   The Revised Presentence Investigation Report

When the Court sentenced Mr. Oliver, it relied upon a Revised Presentence Investigation Report (PSR) that was prepared by the United States Probation Office (PO). *See* PSR.[4]

### 1.   Mr. Oliver's History and Characteristics

Born in Sylvester, Georgia, Mr. Oliver is 60 years old. PSR ¶ 46. His father died of a heart attack in 2012, at age 72, and his mother, age 74, resides in Albany, Georgia. *Id.* At the time of sentencing, Mr. Oliver enjoyed a close relationship with his mother and a positive relationship with his two sisters. *Id.* He had a very close relationship with his father before he passed away in 2012. *Id.* Mr. Oliver lived in Georgia from birth until the tenth grade, when the family moved to Alabama. *Id.* Beginning in 1982, he lived between Alabama and Florida; however, around 1984 or

---

[4]    There is no transcript of Mr. Oliver's sentencing hearing; however, it is the Court's invariable practice to ask each defendant whether the contents of the PSR are accurate. Mr. Oliver did not raise any factual objections to the PSR before the sentencing hearing, and the Court's notes do not indicate that he raised any factual objections to the PSR at the sentencing hearing. The Court has therefore relied on the factual contents of the PSR as true for purposes of his motion for compassionate release.

1985, Mr. Oliver reportedly returned to Georgia, where he remained until moving to Maine on December 5, 2015. *Id.*

Mr. Oliver stated that he had a "good" childhood free from abuse or neglect. *Id.* ¶ 48. Mr. Oliver reported that he graduated from Louisville High School in Louisville, Alabama in 1982. *Id.* ¶ 52. Records from Barbour County High School in Clayton, Alabama, reflect that Mr. Oliver was placed in eighth grade during the 1979-1980 and 1980-1981 school years, and was in special education classes in the 1981-1982 school year. *Id.* The records do not reflect whether Mr. Oliver graduated, but his mother confirms that he completed the twelfth grade. *Id.* Shortly after high school, Mr. Oliver reported attending a technical school in Eufaula, Alabama for approximately four to five months before withdrawing for financial reasons. *Id.* ¶ 53. Records obtained from Sparks State Technical College in Eufala, Alabama reflect that Mr. Oliver enrolled on March 15, 1983 and withdrew on March 30, 1983. *Id.*

Mr. Oliver has been married and divorced three times. *Id.* ¶ 47. At the time of sentencing, he was in a relationship with a woman who works in Charleston, Maine. *Id.* He has fathered no children. *Id.* He noted enduring three difficult deaths: his first wife, who died in 1986, after the two had divorced; his paternal grandmother, with whom he was close, in 2009; and his father, in 2012. *Id.* ¶ 48. At the time of sentencing, Mr. Oliver described his life as "good so far," and noted "his positive attributes as being easy to get along with, and that he helps those in need." *Id.* He said, "When I get out [of jail] I want to get married and start my own business, get my life straightened out." *Id.* Mr. Oliver has been incarcerated since September 15,

2016. *Id.* ¶ 54. Prior to entering custody, Mr. Oliver reported employment in Georgia, Illinois, and Maine as a part-time laborer, a truck driver, a production worker/paint sprayer, and a self-employed tree-cutting and landscaping service-provider. *Id.* ¶¶ 55-60.

Mr. Oliver advised he first consumed alcohol when he was approximately seventeen years old, and at the time of sentencing reported that he drinks alcohol socially but not daily and never to excess. *Id.* ¶ 51. However, the Probation Officer (PO) noted that Mr. Oliver had two prior convictions for Driving Under the Influence of Alcohol in 1992 and 1993. *Id.* His mother said that Mr. Oliver "used to drink a lot," but that he does not engage in that behavior anymore. *Id.* He denied any history of using illicit substances. *Id.*

In the PSR, Mr. Oliver reported that he was in "fair" health, explaining that his family has a history of heart problems and that he had suffered two cardiac events in the past and may have a murmur. *Id.* ¶ 49. He reported that he was treated for the first event at Flint River Medical Center in Montezuma, Georgia, around 1994-1995, and for the second event at Coliseum Hospital in Macon, Georgia, in the early 2000s. *Id.* Records obtained from the Coliseum Medical Center confirm that the Defendant was admitted on September 19, 2006 for precordial discomfort, strongly suspicious of cardiac-related chest pain. *Id.* He was discharged the following day after several tests with final diagnoses of noncardiac chest pain due to reflux and esophageal spasm, hyperlipidemia, and nonobstructive coronary artery disease with a 20% mid LAD lesion. *Id.* The PO was unable to obtain records from Flint River

17

Medical Center. *Id.* Mr. Oliver advised at the time of sentencing that he occasionally was having trouble breathing and was experiencing shortness of breath due to his cardiac issues. *Id.*

Records obtained from Phoebe Putney Memorial Hospital in Albany, Georgia reflect that Mr. Oliver underwent surgery on January 20, 2010 to repair a nonreducible epigastric ventral hernia and umbilical hernia; the surgery required the placement of a 6 x 8 inch mesh wall to repair his abdominal wall. *Id.* Records from Phoebe Sumter Medical Center in Americus, Georgia confirm the following diagnostic history: left upper arm and forearm myalgia (April 21, 2005), ultraviolet keratitis (July 30, 2008), closed fracture of the right fifth metacarpal (May 23, 2011), and cellulitis of the left knee (August 29, 2011). *Id.* Mr. Oliver also reported undergoing surgery on his left knee to eradicate a MRSA infection at a hospital in Americus, Georgia; the PO did not find records that confirmed this, but his mother did report that he has a history of "staph infections." *Id.*

At sentencing, Mr. Oliver reported he was currently prescribed 300 mg, daily, of Zantac for acid reflux, and 25 mg, daily, of an unknown medication for migraine headaches. *Id.* Records obtained from Piscataquis County Jail in Dover-Foxcroft, Maine, dated January 21, 2017, reflect the Defendant was prescribed 25 mg of Topamax per night to prevent migraines; however, through objections the Defendant advised at the time of sentencing that he was no longer taking this medication. *Id.*

Mr. Oliver reported no history of mental health diagnoses or treatment, and no history of suicidal ideations or attempts. *Id.* ¶ 50. At his sentencing, it was

18

unknown if Mr. Oliver was required to complete sex offender treatment following his 2012 conviction for child molestation in Georgia.  *Id.*

### 2.   Mr. Oliver's Criminal History

On December 24, 2011, Mr. Oliver touched the "upper thigh and private area" of a child under the age of sixteen years old "with the intent to arouse and satisfy the sexual desires of himself." *Id.* ¶ 40.  On November 7, 2012, Mr. Oliver was accordingly sentenced to ten years of incarceration and ordered to pay $248.60 in restitution for one count of Child Molestation by the Sumter County Superior Court in Americus, Georgia.   *Id.* ¶¶ 8, 40.  Of his ten-year sentence, he received a two-year credit for time served, and the balance on probation.  *Id.* ¶ 40.

On October 28, 2015, Mr. Oliver was arrested on a probation violation warrant for committing Theft by Receiving Stolen Property on or around August 31, 2015.  *Id.* For this offense, he was sentenced to twelve months of probation and a $275 fine by the Dougherty County State Court in Albany, Georgia.  *Id.* ¶ 41.  Mr. Oliver allegedly violated probation a second time by failing to report as directed and failure to make a payment toward the case on January 9, 2016.  *Id.*

In addition, when Mr. Oliver committed the offenses giving rise to the sentence he seeks to reduce in the present motion, he was under a criminal justice sentence (probation) for the two offenses described above.  *Id.* ¶ 42.

### 3.     Nature and Circumstances of the Offenses

#### a.     Count One: Failure to Register as a Sex Offender (1:16-cr-00137-JAW-1)

On September 15, 2016, Mr. Oliver was named in a one-count complaint charging him with Failure to Register as a Sex Offender. *Id.* ¶ 1.  That same day, an arrest warrant was issued in response to the complaint and the Defendant was taken into federal custody.  *Id.*

The case was investigated by the U.S. Marshal Service (USMS); Maine Sex Offender Registry (MSOR); the Dougherty County, Georgia Sheriff's Office (DSCO); and other law enforcement agencies. *Id.* ¶ 5.  A detective with the Rosenberg, Texas Police Department, acting in an undercover capacity as a fourteen-year-old female (UC), corresponded with Mr. Oliver from January through September 2016.  *Id.*  In his correspondence with the undercover agent, Mr. Oliver "discussed traveling from Maine to Texas to have intercourse with UC, requested sexual pictures of UC, and constantly asked if UC was deleting his messages and pictures after UC opened them."  *Id.* ¶ 5.  During this time, Mr. Oliver sent UC at least eight files of child pornography, pictures of his genitalia and of his face.  *Id.*

On April 19, 2016, UC provided information about his conversations with Mr. Oliver to a deputy with the DCSO, including Mr. Oliver's report that he lived in Maine. *Id.* ¶ 7.  DCSO subsequently performed a residence check at the Defendant's last known address in Georgia and found the residence vacant.  *Id.*  Mr. Oliver, a lifetime registrant due to his prior conviction for Child Molestation in Georgia, last registered a change of address on November 11, 2015.  *Id.*  A family member advised

DCSO that Mr. Oliver had relocated to Maine in December 2015; "therefore, he failed to register his change of address within 72 hours, as required by law." *Id.* The USMS investigation determined that Mr. Oliver's Electronic Benefits Transfer card had been used in Dover-Foxcroft, Maine on seven occasions from December 13, 2015 to December 23, 2015, and also revealed that Mr. Oliver signed a document notifying him of his duty to register and that he had successfully completed the registration process on prior occasions. *Id.*

Pursuant to a federal warrant, Mr. Oliver was arrested in Dover-Foxcroft on September 15, 2016. *Id.* The subsequent investigatory search of Mr. Oliver's residence and conversations with Mr. Oliver's employers confirmed that Mr. Oliver had resided in Maine from December 30, 2015 to September 15, 2016. *Id.* "Of note," the PSR reports, "one employer advised that a woman showed the employer a text message from Oliver that said 'I want to have a threesome with you and your twelve year-old daughter.'" *Id.* Mr. Oliver informed the employer that he sent the text message while intoxicated and did not mean it but denied making these assertions in an interview with the PO. *Id.*

### b. Count One: Possession of Material Containing Child Pornography (1:17-cr-00071-JAW-1)

On June 8, 2017, Mr. Oliver appeared before the Court, waived indictment, and pleaded guilty to a one-count information charging him with Possession of Material Containing Child Pornography. *Id.* ¶ 4.

The conduct underlying this count is the same as that described above. In Mr. Oliver's correspondence with UC, an undercover agent who he believed to be a

fourteen-year-old female, the Defendant requested sexual pictures of UC and sent UC at least eight files of child pornography, pictures of his genitalia, and pictures of his face. *Id.* ¶ 5. The images of child pornography were forwarded to the National Center for Missing and Exploited Children (NCMEC) for child identification. *Id.* ¶ 6. The NCMEC report reflected that four of the images had been previously identified by law enforcement. *Id.* These included a child who was under twelve years of age when the images were produced. *Id.*

### 4.    Guidelines Calculations

The Court used the 2016 version of the United States Sentencing Guidelines to determine the Defendant's recommended sentence range. *Id.* ¶ 15. Following the Sentencing Guidelines, the Court grouped the "closely related counts" in Docket Nos. 1:16-cr-00137-JAW-1 and 1:17-cr-00071-JAW-1 pursuant to U.S.S.G. § 3D1.2.[5] *Id.* ¶ 16.

The adjusted offense level for Docket No. 1:16-cr-00137-JAW-1 was 22 and the adjusted offense level for Docket No. 1:17-cr-00071-JAW-1 was 32.[6] *Id.* ¶¶ 16, 26. The PSR recommended a cumulative three-point reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a), (b), *id.* ¶¶ 28, 29; applying this reduction to the higher adjusted offense level of 32, the credit for acceptance resulted in a total offense level of 29. *Id.* ¶ 30.

---

[5]    The two counts of conviction were grouped for Guidelines calculations purposes because Count One under Docket No. 1:16-cr-00137-JAW-1 has an enhancement which takes into account offense conduct related to Count One under Docket No. 1:17-cr-0071-JAW. *Id.* "Specifically, the enhancement for committing a sex offense against a minor while in failure[-]to[-]register status can be applied under U.S.S.G. §[] 2A3.5(b)(1)(C)." *PSR* ¶ 16.

[6]    PSR ¶ 16 incorrectly calculated the adjusted offense level for Count One in Docket No. 1:17-cr-00071-JAW as 31. The PSR correctly calculated the adjusted offense level as 32 at ¶ 26.

The PSR calculated a criminal history of six, establishing a criminal history category of III.  *Id.* ¶¶ 31-42.

Mr. Oliver's Guideline range was one-hundred and eight months to one-hundred and thirty-five months.  *Id.* ¶ 64.  However, the statutorily authorized minimum sentence of ten years for Count One in Docket No. 1:17-cr-00071-JAW-1 pursuant to 18 U.S.C. § 2252A(b)(2) adjusted the Guideline range to one-hundred and twenty months to one-hundred and thirty-five months.  *Id.* (citing U.S.S.G. § 5G1.1(c)(2)).  He was not eligible for probation; the Guideline term of supervised release was five years to life.  *Id.* ¶¶ 66-70.  The Court sentenced Mr. Oliver to one-hundred and twenty months on Count One of Docket No. 1:16-cr-00137-JAW-1 and one-hundred and fifty-one months on Count One of Docket No. 1:17-cr-00071-JAW, to be served concurrently.  *J.* at 2.  The Court also imposed a twenty-year period of supervised release on each count, to be served concurrently, and a $100 special assessment on each count.  *Id.* at 3, 6.  The Court did not impose a fine.  *J.* at 6.

## V.   DISCUSSION

The Court first addresses Mr. Oliver's motion using the criteria of the applicable statutes and Guidelines and then reviews whether he has otherwise made the case for compassionate release.  There are two issues: first, whether Mr. Oliver's motion is procedurally proper, and second, whether he has proven that his compassionate release request for home confinement has merit.

A.   **Exhaustion**

Here, the parties agree that Mr. Oliver has satisfied the procedural requirement of exhausting administrative remedies before filing his motion in court. *See Def.'s Mot.* at 3, 7; *Gov't's Opp'n* at 8-9.  Mr. Oliver sent a copy of his request for a sentence reduction dated March 26, 2024 to the Warden of F.C.I. Marianna.  *See Def.'s Mot.* at 7; *Gov't's Opp'n.* at 9.  In Mr. Oliver's motion for compassionate release, dated May 14, 2024, he indicated no response was received from the Warden.  *Def.'s Mot.* at 3; *Gov't's Opp'n* at 9.  As this demonstrates that more than thirty days have passed between F.C.I. Marianna's receipt of Mr. Oliver's request for sentence reduction and his filing of the motion for compassionate release, the Court turns to the merits of Mr. Oliver's motion.  *See Gov't's Opp'n* at 9.

When a defendant has shown they have met the procedural prerequisites for bringing a motion for compassionate release, as Mr. Oliver has here, a court may reach the merits of the petition for compassionate release and determine whether "extraordinary and compelling reasons warrant" the movant's release, considering in its determination "the factors set forth in [U.S.S.G.] section 3553(a)" and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

B.   **Danger to the Community**

Any reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A). Relevant here, the United States Sentencing Commission issued a policy statement that states the Court must determine "the defendant is not a danger to the safety of

any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . ..”  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). Thus, notwithstanding any extraordinary and compelling reasons for Mr. Oliver's release, the Court must determine that he is not a danger to the community. Otherwise, a reduced sentence is improper.

The Government contends that Mr. Oliver poses too great a danger to the community to be released.  *Gov't's Opp'n* at 14-15.  It claims that Mr. Oliver has failed to meet his burden of showing that, if released, "the safety of any other person and the community" would reasonably be assured.  *Id.* at 14-15 (quoting 18 U.S.C. § 3142(g)).

Mr. Oliver does not directly address the factors in 18 U.S.C. § 3142(g) but does include as an additional attachment to his motion for compassionate release a May 16, 2024 letter informing the Court that he has "taken many programs in the B.O.P. [which] have changed [his] thinking in light of who [he] once was."  *Add'l Attachs.* (ECF No. 52).  Mr. Oliver also tells the Court, "I have learned my lesson, and I'm very sorry for what I have done."  *Id.*

The Court is encouraged to learn that Mr. Oliver is availing himself of the BOP's educational resources, and the Court recommends to Mr. Oliver that he continue these efforts as they will help him when he is released from BOP custody. However, Mr. Oliver has not met his burden to show that he is no longer a danger to the community.  The Court agrees with the Government's assessment that Mr. Oliver's criminal history is serious and substantial, and that, despite serving time for

the underlying offense, Mr. Oliver "was not deterred from his sexual interest in children." *Gov't's Opp'n* at 15.  To the contrary, the Court notes that Mr. Oliver "made comments to the woman at his job about having sexual relations with her daughter," and "spent months communicating and indicating his sexual desire to be with someone who he thought was a 14-year-old girl." *Id.*  The Court agrees with the Government's conclusion that "[t]hese behaviors endanger children everywhere and Oliver remains a danger to the community." *Id.* at 15-16.  Standing alone, this conclusion precludes his release.

### C.    The 3553(a) Factors

The Court recalls that it considered the 18 U.S.C. § 3553(a) factors at Mr. Oliver's sentencing, making sure at that time to pay particular attention to his history and characteristics, the nature and circumstances of the offense, and the need to avoid unwarranted sentencing disparities.  After reviewing the whole record, the Court reaffirms its prior determination based on these factors.  In addition, the Court has considered the need for just punishment and specific and general deterrence. These factors do not weigh in favor of releasing Mr. Oliver.

### D.    Extraordinary and Compelling Reasons

To grant Mr. Oliver's petition under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence.   After reviewing Mr. Oliver's medical records, the Court agrees with the Government that Mr. Oliver has not shown that he is entitled to sentence reduction under either U.S.S.G. § 1B1.13(b)(1)(A) or (B).  *See Gov't's Opp'n* at 9-14.

26

### 1.   Mr. Oliver's Allegation of Terminal Illness

First, the Government correctly informs the Court that none of the medical conditions Mr. Oliver submitted in his motion for compassionate release is included on the list of illnesses defined as "terminal" under U.S.S.G. § 1B1.13(b)(1)(A).  Indeed, Mr. Oliver does not claim that he is suffering from "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia."  *Gov't's Opp'n.* at 9-10 (quoting U.S.S.G. § 1B1.13(b)(1)(A)).

Second, although the U.S. Sentencing Commission did not intend the list of illnesses enumerated in U.S.S.G. § 1B1.13(b)(1)(A) to be exhaustive, the Court again agrees with the Government that Mr. Oliver does not give the Court sufficient information to conclude that he is suffering from any other illness that should properly be considered terminal.  *See id.* at 9.  Mr. Oliver reports that he is suffering from hypertension, hyperlipidemia, a history of heart attacks, prediabetes, COPD, bradycardia, cardiac catheterization, coronary artery disease, unstable angina, an enlarged heart, high blood pressure, major back problems, antithrust in both feet, asthma and breathing problems, and GERD.  *Def.'s Mot.* at 7.  As the Government points out, Mr. Oliver "fails to specify which health condition has been diagnosed as a terminal illness and does not provide any evidence of such diagnosis."  *Gov't's Opp'n* at 9-10 (citing *Def.'s Mot.* at 4).  The Court also finds it instructive that "on Oliver's most recent visits to Health Services, no new medical conditions or health concerns were recorded[,] [h]is vitals were normal, and he appeared to be in good health, aside from his preexisting conditions."  *See id.* at 12.

Based on the foregoing, the Court agrees with the Government that Mr. Oliver has failed to meet his burden of showing he has a terminal illness pursuant to U.S.S.G. § 1B1.13(b)(1)(A). *See Gov't's Opp'n* at 9-13.

> **2.    Mr. Oliver's Allegations of Suffering from Physical Medical Conditions of Which are Difficult to Administer Self-Care in BOP and From Which he is not Expected to Recover**

The Court also agrees with the Government that Mr. Oliver has not met his burden of showing that he has "extraordinary and compelling reasons" for sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(1)(B). *See Gov't's Opp'n* at 13. Mr. Oliver tells the Court that he is "suffering from a serious physical medical condition which substantially diminishes his ability to provide self-care within the environment of a correctional facility, and he is not expected to recover from a list of serious physical medical conditions." *Def.'s Mot.* at 5. However, while Mr. Oliver provides the Court with a list of his illnesses, he does not inform the Court which of these qualify as "a serious physical or medical condition." *See, generally, Def.'s Mot.* at 1-7. Even if the Court infers that Mr. Oliver considers that all of his enumerated medical conditions meet this bar, he still does not tell the Court how any or all of his submitted illnesses function to "substantially diminish[] [his] ability . . . to provide self-care" while incarcerated. *See* U.S.S.G. § 1B1.13(b)(1)(B). He similarly does not give the Court any information from which the Court can reasonably conclude that he suffers from an illness "from which he . . . is not expected to recover." *See id.*

Based on the foregoing, the Court agrees with the Government that Mr. Oliver's medical records suggest he in fact is able to address his medical conditions

through, among other things, self-administered prescription medication, while incarcerated. *See Gov't's Opp'n* at 10, 13. Mr. Oliver has not pleaded any facts or included any evidence that would allow the Court to find to the contrary.

Thus, the Court concludes that Mr. Oliver has not shown "extraordinary and compelling reasons" for sentence modification pursuant to U.S.S.G. § 1B1.13(b)(1)(B).

## VI.   SUMMARY

The Court finds that compassionate release is not warranted in this case. In coming to this decision, the Court does not seek to diminish the impact on any person, including Mr. Oliver, of eight years and one month of incarceration, which is the amount of time he has now served. But, as noted earlier, Mr. Oliver has committed serious offenses, specifically against children, which place the public in danger, and his possession of child pornography offense occurred after he had been convicted of and served a period of incarceration for child molestation. The Court remains concerned that Mr. Oliver's criminal history, including his state and federal offenses, place children at risk, a group of potential victims who are uniquely vulnerable and often unable to protect themselves. In addition, Mr. Oliver has not demonstrated that his medical conditions amount to a terminal illness or a serious medical or physical condition which cannot be treated while he is incarcerated.

In summary, when the Court balances Mr. Oliver's non-terminal medical conditions against the risk to the public, the Court concludes that Mr. Oliver must stay incarcerated. Mr. Oliver was convicted of a child sex offense and served time in prison; despite this, upon his release he sent sexually explicit images to someone the

Defendant believed to be a fourteen-year-old female and, separately, solicited a mother to permit the Defendant to have sex with her twelve-year-old daughter. This is the underlying conduct which led the Court to impose Mr. Oliver's long concurrent sentences and the Court does not find that Mr. Oliver has demonstrated that a deviation from these sentences is now warranted.

## VII.   CONCLUSION

The Court DISMISSES without prejudice William Curtis Oliver's Motion for Compassionate Release, 1:16-cr-00137-JAW-1 (ECF No. 50), 1:17-cr-00071-JAW-1 (ECF No. 24).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of October, 2024